**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In Re:<br><br>DWIGHT A. REED<br><br>Debtor. | CHAPTER 11<br><br>CASE NO.: 24-01113-lmj11<br><br>UNITED STATES TRUSTEE'S<br>OBJECTION TO PLAN CONFIRMATION |

The Acting U.S. Trustee for Region 12 ("UST"), through the undersigned Trial Attorney, hereby files this Objection to the confirmation of the Chapter 11 Plan filed by Debtor on January 21, 2025 ("Plan") found at docket number 88. In support thereof the UST states as follows:

## JURISDICTION

1. The Court has jurisdiction over this Objection to Confirmation ("Objection") pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The UST is an independent branch of the United States Department of Justice charged with the administration of bankruptcy estates pursuant to 28 U.S.C. § 581, *et. seq*.

3. This is a core proceeding pursuant to 28 U.S.C. § 157. The UST has standing to raise, appear and be heard on this Motion pursuant to 11 U.S.C. § 307; 28 U.S.C. § 581 *et. seq*.

## FACTS

4. On January 21, 2025 Debtor Dwight Reed ("Debtor") filed his Chapter 11 Plan of Reorganization at docket 88.

5. The Court had set a hearing on the Debtor's Motion to Extend Time to file his chapter 11 plan, found at docket 80, on January 22, 2025.

6. The Plan filed at docket 88 contemplated a liquidation analysis. The liquidation analysis was filed as a support document at docket 120 on February 12, 2025. The Certificate of Service found at docket 121 indicates all creditors and parties and interest were served with the

1

Plan, Liquidation Analysis, Ballots, and the Court's Order & Notice of Bar Date re: Debtor's Chapter 11 Plan on February 12, 2025.

7. In light of the Plan being filed on January 21 the Motion to Extend Time was withdrawn and no hearing was held.

8. As discussed in the United States Trustee's *Motion to Dismiss*, filed on January 31, 2025 at docket 94, the monthly operating reports filed in this case reflect questionable and concerning purchases, including $31,450.80 spent at casinos between August 2024 and January 2025.

9. The Plan currently contemplates approximately $8,740.80 in monthly payments to various secured and priority creditors, as well as quarterly payments to the Small Business Administration of $549.12, over 60 months.

## OBJECTIONS

A. *Subchapter V Trustee*

10. The Plan does not contemplate the role of the subchapter V trustee post-confirmation. The UST would insist that any plan confirmed under 11 U.S.C. § 1191(b) provide for the ongoing oversight of the subchapter V trustee, as well as payment of all approved fees of the subchapter V trustee.

B. *Other Objections*

11. Greater Iowa Credit Union has filed Proof of Claim 26, evidencing an outstanding arrearage amount of $23,084.90 necessary to cure the default. Greater Iowa Credit Union holds a second mortgage on Debtor's homestead. The Plan contemplates curing an arrearage of $7,960.70 and does not dispute the Proof of Claim. Upon information and belief, the Plan does not fully cure the arrearage of Greater Iowa Credit Union.

C. *Failure to Comply with UST Requirements*

12. At the Section 341(a) Meeting of Creditors held on October 21, 2024, Debtor was asked about his progress in opening a debtor-in-possession account. Debtor testified that it had been opened "last Thursday or Friday" but that he had not transferred the funds in at that time. Monthly Operating Reports reflect Debtor did not begin using his debtor-in-possession account regularly until January, 2025. The UST requested proof of opening the DIP account prior to, at, and upon conclusion of the 341(a) on numerous occasions.

13. The December Monthly Operating Report found at docket 115 includes statements from Axos Bank, a commonly used bank for debtor-in-possession accounts. However, the statement includes no notable transactions for the month of December, with the exception of a $22,000 wire from Mercury Bank on December 30, 2024. The attached Mercury Bank statements show an extensive transaction history from the non-approved institution throughout the case. The January Monthly Operating Report found at docket 123 is the first Monthly Operating Report since the beginning of the case in August 2024 to reflect most transactions going through the approved depository of Axos Bank.

14. Finally, the UST filed her Motion to Dismiss at docket 94. No response has been filed, and the allegations contained in the Motion have not been rebutted. The Motion to Dismiss details the failures of the Debtor to comply with requirements in the chapter 11 case, and detail his gross mismanagement of the bankruptcy estate.

*D. Feasibility Cannot Be Determined*

15. The filed Monthly Operating Reports continue to show significant commingling of personal and business funds. At the Section 341(a) Meeting of Creditors, Debtor testified he never historically took a salary for the business; his practice was to use business funds as he saw fit to fund his lifestyle. All use of business funds were categorized as distributions, taken solely at the

Debtor's discretion. The continued commingling of funds make it nearly impossible to determine the financial picture of the Debtor and the Debtor's business. It further renders it impossible for the parties in interest to undergo a feasibility analysis to determine if Debtor has the ability to make the proposed payment. The continued commingling of business and personal finances evidences gross mismanagement of the estate.

16. The Liquidation Analysis, marked as Exhibit K to the Plan of Reorganization, was filed on February 12, 2025 at docket 120. The Plan states the values contained in the Liquidation Analysis represent "Debtor's best estimates after reasonable investigation and evaluation." However, a number of assets contained in the Liquidation Analysis have substantially changed values from that listed in the Debtor's Schedules and Statements or are not listed at all. Specifically:

   a. Docket 47, Debtor's Amended Schedule A/B, lists Debtor's equity in AON Studios, LLC of $799,275 wholly owned solely by the Debtor. Debtor testified at his 341(a) Meeting of Creditors that this would likely increase in the coming months due to new offerings hosted by the platform, which includes substantial marketing and advertising expended by the business. The Liquidation Analysis does not list the Debtor's ownership interest in his share of AON Studios, LLC.

   b. Docket 47, Debtor's Amended Schedule A/B, also lists a judgment against Bishop Demetrius Sinegal in the amount of $690,000. Debtor had filed a defamation lawsuit and received this default judgment in April 2024. At his Section 341(a) Meeting of Creditors, Debtor testified the amount was owed to him, the church, and his wife. Debtor also stated he had been in contact with collection attorneys and absolutely intended to attempt to collect on the judgment. This asset is not

contemplated in the liquidation analysis nor discussed in the Plan. It is unclear what, if any, steps have been taken towards the collection of this valuable asset.

    c. Docket 24, Debtor's Schedule A/B, lists a debt owed to Debtor by J.W. Reed Christian Academy in the amount of $700,000. A review of the Monthly Operating Reports filed for August through January reflects J.W. Reed Christian Academy paid Debtor approximately $144,431 throughout the current subchapter V case. Debtor testified at his 341 Meeting that he frequently covers the costs of his businesses, so it is unclear if these payments were meant to satisfy the outstanding loan to the Debtor or for some other purpose. Nevertheless, the liquidation analysis lists only a $100,000 value. The diminution is not explained in the Plan.

    d. The Liquidation Analysis contemplates $1,000 in accounts receivable. The January Monthly Operating Report filed at docket 123 includes an "A/R Aging Summary" as of January 31, 2025. The report includes a $5,000 debt owed to the Debtor, personally. Even taking out this amount, AON Studios, LLC, wholly owned by the Debtor, has $18,820.80 due to it at the end of January. The Plan does not contemplate taking action to recover this amount, and there is no explanation as to the diminution of value to the amount listed in the Liquidation Analysis.

17. The Plan details the importance of the Liquidation Analysis. The current Liquidation Analysis grossly underestimates values of various assets, fails to take into account additional disclosed assets, and does not give creditors and other parties in interest an accurate picture of the Debtor's financial condition and viability of the Chapter 11 Plan of Reorganization.

18. The J.W. Reed Christian Academy is required to repay Debtor for amounts Debtor loaned to it. The Agreement, dated August 1, 2024 but not signed until August 30, 2024, provides

for monthly payments to the Debtor in the amount of $11,666.67. However, the filed Monthly Operating Reports do not appear to reflect regular payments as required by the loan agreement. The Plan does not discuss what, if any, action the Debtor intends on taking to enforce the terms of this agreement.

19.     The Plan does not discuss any avoidance actions or other "chapter 5 causes of action" that are expected to be taken. In particular, the Plan does not contemplate taking any action to seek to recover the $31,450.80 spent at "Horseshoe Council Bluffs" and "Harrah's Council Bluffs" during the bankruptcy, as evidenced on the August – January Monthly Operating Reports. Upon information and belief, both locations are casinos in Council Bluffs. These items constitute gross mismanagement of estate funds.

20.     The Plan is deficient in many respects and cannot be confirmed as the requirements of 11 U.S.C. § 1129(a) have not been met. It is unclear if or how the Debtor will be successful under this Plan of Reorganization, in violation of 11 U.S.C. § 1129(a)(11).

WHEREFORE, the Acting United States Trustee requests this Court denies confirmation of the Plan filed at docket 88 and grant the United States Trustee's Motion to Dismiss found at docket 94.

Dated this 6th of March 2025.

                                                                                    Respectfully Submitted,

                                                                                    **Mary R. Jensen**
                                                                                    Acting United States Trustee

                                                                                    By: */s/ Claire R. Davison*
                                                                                   Trial Attorney
                                                                                   210 Walnut Street, Room 793
                                                                                   Des Moines IA  50309
                                                                                   202-320-3943
                                                                                   Claire.R.Davison@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned certifies that copies of this document were served on the parties listed below by electronic mail or first-class mail, postage prepaid, on March 6, 2025:

    All parties receiving ECF notifications.

Dwight Anthony Reed
PO Box 1681
Des Moines, IA 50305

                                        */s/ Marilyn Kennedy*
                                        Marilyn Kennedy
                                        Paralegal Specialist