# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Chapter 11 |
| DWIGHT ANTHONY REED, | ) Case No. 24-01113-lmj11 |
| Debtor. | ) |

## OBJECTION TO DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

COMES NOW U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-2 ("U.S. Bank") and files this objection to the Debtor's Chapter 11 Plan of Reorganization dated January 21, 2025 (the "Objection"). In support of the Objection, U.S. Bank states as follows:

## BACKGROUND

1. On August 2, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Iowa (the "Court") commencing this case.

2. On August 27, 2025, the Debtor filed a Motion to Convert his Chapter 13 case to a case under subchapter V of Chapter 11 (Docket No. 15).

3. No objections were filed, and the Court entered an order converting the case to a case under subchapter V of Chapter 11 (the "Chapter 11 Case") (Docket No. 28).

4. Since the Petition Date, the Debtor has remained in possession of his assets and is operating as a debtor-in-possession.

5. On January 21, 2025, the Debtor filed a Plan of Reorganization (Docket No. 88) (the "Plan").

6. U.S. Bank is the holder of two fully secured claims. On October 9, 2024, U.S. Bank filed a fully secured proof of claim in the amount of $478,390.25 (exclusive of accruing interest, fees, and costs) evidenced by the claim in the Claims Registry assigned Claim No. 23 (the "U.S. Bank Home Loan Claim"). The U.S. Bank Home Loan Claim is treated as an Allowed Class 2 Secured Claim in the Debtor's Plan.

7. The U.S. Bank Home Loan Claim is evidenced by a Promissory Note dated February 11, 2020, in the original loan amount of $274,000.00 and executed by Dwight A. Reed (the "U.S. Bank Home Promissory Note"). The U.S. Bank Home Promissory Note contained a two (2) year term and as of the Petition Date provided for fixed interest at a rate of 11.5% per annum (excluding default interest).

8. The U.S. Bank Home Promissory Note is secured by that certain Mortgage, Security Agreement and Assignment of Rents dated February 11, 2020, and recorded with the Polk County, Iowa Recorder at Number 201900069293, Book 17698, Page 645, and is a first and senior Mortgage on that certain property located at 2901 Druid Hill Dr., Des Moines, Iowa ("U.S. Bank Home Mortgage"). The U.S. Bank Home Mortgage is secured by the Debtor's personal residence.

9. On October 9, 2024, U.S. Bank filed a fully secured proof of claim in the amount of $477,092.67 (exclusive of accruing interest, fees, and costs) evidenced by the claim in the Claims Registry assigned Claim No. 24 (the "U.S. Bank Commercial Loan Claim"). The U.S. Bank Commercial Loan Claim is treated as an Allowed Class 5 Secured Claim in the Debtor's Plan.

10. The U.S. Bank Commercial Loan Claim is evidenced by that certain Promissory Note dated September 27, 2022, in the original loan amount of $392,000.00 (the "U.S. Bank Commercial Promissory Note") and executed by Dwight A. Reed, Managing Member on behalf

2

of AON Studios, LLC. The U.S. Bank Commercial Promissory Note had a thirty (30) year term and provided for monthly installment payments of $4,180.61 of interest and principal, in which interest was fixed at 12.49% per annum (excluding default interest).

11.     The U.S. Bank Commercial Promissory Note is secured by that certain Commercial Mortgage, Security Agreement and Assignment of Rents dated September 27, 2022, and recorded with the Polk County, Iowa Recorder at Number 202200077320, Book 19285, Page 758, and is a first and senior Mortgage on that certain property located at 1725 East University Avenue, Des Moines, Iowa ("U.S. Bank Commercial Mortgage").  The U.S. Bank Commercial Mortgage is secured by real property owned by the AON Studios business.  To secure payment of the U.S. Bank Commercial Promissory Note, the Debtor, Dwight Reed, executed and delivered an Unlimited Guaranty.

12.     Pre-bankruptcy, U.S. Bank initiated foreclosure proceedings in the Iowa District Court for Polk County, Case No. EQCE088494 and Case No. EQCE089909 to foreclose its security interest in both properties (the "State Court Actions"). U.S. Bank received orders for judgment in both State Court Actions and was proceeding with execution of the real property when the proceedings were stayed due to the Debtor filing his petition under Chapter 13 of the Bankruptcy Code.

13.     On January 31, 2025, the United States Trustee (the "UST") filed a Motion to Dismiss (Docket No. 94).

14.     U.S. Bank shares many of the concerns raised in the UST's Motion to Dismiss and does not believe the Plan is feasible.

15.     For the reasons stated below, the Plan, as filed, cannot be confirmed.

## OBJECTION

### A. The Plan Does Not Contain All the Requirements under Section 1190 of the Bankruptcy Code

16. Apart from the requirements of section 1122 and section 1123 of the Bankruptcy Code, a plan under subchapter V must include: "(1) a brief history of the debtor's business operations; (2) a liquidation analysis; and (3) **projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization".** 11 U.S.C. § 1190 (emphasis added).

17. The requirements under section 1190 are crucial for the court and parties in interest to assess the feasibility of the plan, as it allows the court to determine whether the debtor will be able to comply with the terms of the plan based on historical performance and current conditions. *See In re Premier Glass Servs., LLC*, 664 B.R. 465, 471 (Bankr. N.D. Ill. 2024).

18. As the bankruptcy court noted in *Premier Glass*, "projections are critical because, once a nonconsensual plan is confirmed, only a debtor may modify it. *Id.* (citing 11 U.S.C. § 1193(c)). "If the debtor's actual income is lower than projected, the debtor must nonetheless pay the full amount as projected in the plan (but it can ask the court to approve a modification). If it turns out the debtor's actual income is higher than projected, those gains inure only to the debtor's benefit: a creditor cannot ask for the debtor's payments to increase." *Id.* at 471.

19. "Moreover, once an interested party brings an objection, the debtor must show the court why the objection is unfounded; the burden does not shift to the objector to prove that a plan is not fair and equitable. *Id.* at 471-72 (citing *In re Trinity Family Prac. & Urgent Care, PLLC*, 661 B.R. 793, 808-809 (Bankr. W.D. Tex. 2024)).

4

20. Further, "when a creditor raises questions as to the reasonableness of expenses the debtor includes on a projected budget, the debtor, at minimum, must be able to explain to the court's satisfaction how the costs have been calculated." *Id.*

21. The Debtor bears the burden of proof and "must satisfy the court that the projections are credible, and thus [prove] the plan is fair and equitable before the court can confirm the plan." *Id.*

22. The Debtor has failed to comply with section 1190 of the Bankruptcy Code as the Debtor has not included projections detailing the ability of the Debtor to make Plan payments.

23. The Debtor also filed a support document on February 12, 2025 that included a bare bones liquidation analysis (the "Liquidation Analysis") (Docket No. 120). The Liquidation Analysis appears to contain inaccuracies. For example, the Chapter 11 Administrative Expenses are listed as $50,000, but the Debtor has already paid more than $50,000 in fees to professionals during this case.

24. The Plan contemplates monthly payments to creditors in the amount of approximately $8,740.80 in addition to quarterly payments to creditors in the amount of approximately $549.12.

25. Based upon prior financials, the Debtor's financial history, and recent monthly operating reports, U.S. Bank has serious doubts regarding the feasibility of the Debtor to make such payments under the Plan. The Debtor has comingled business and personal funds, does not have strong record keeping, and does not appear to have a steady stream of reliable income to make such Plan payments.

26. Since the bankruptcy filing, the Debtor has not consistently been making payments on the U.S. Bank Home Loan Claim or the U.S. Bank Commercial Loan Claim, nor has he been

making payments to Greater Iowa Credit Union as noted in their Objection to the Plan filed on February 27, 2025 (Docket No. 124).

27. The Debtor's recent monthly operating reports also do not show a steady, reliable stream of income.

28. Due to the lack of detailed plan projections and a budget regarding how Debtor intends to make his plan payments, creditors, this Court, and other parties in interest are not able to determine whether the Plan is feasible. The Debtor has failed to comply with section 1190 of the Bankruptcy Code due to his failure to attach such projections to his Plan. Based on the foregoing, the Plan cannot be confirmed.

### B. The Plan is Not Feasible and Does Not Provide for Adequate Means for Implementation Pursuant to Section 1123(a)(5) of the Bankruptcy Code

29. Not only is it the Debtor's burden to prove by a preponderance of the evidence that a subchapter V plan includes all of the contents and information required by section 1190, but the Debtor must also prove that the Plan satisfies all of the confirmation requirements of section 1191, which also includes the applicable requirements under section 1129(a). *In re Trinity Fam. Prac. & Urgent Care PLLC*, 661 B.R. 793, 808 (Bankr. W.D. Tex. 2024). If confirmation of a nonconsensual plan is sought pursuant to section 1191(b), the Debtor must also prove "that the subchapter V plan does not 'discriminate unfairly' and is 'fair and equitable' with respect to each class of claims or interests that is impaired under and has not accepted the subchapter V plan." *Id*. 808-09.

30. Under section 1129(a)(11), a Chapter 11 plan cannot be confirmed unless it is feasible. 11 U.S.C. § 1129. Section 1129(a)(11) of the Bankruptcy Code, also known as the feasibility test, requires that plan "confirmation is not likely to be followed by liquidation or the need for further financial reorganization*.*" *In re Monnier Bros*., 755 F.2d 1336, 1341 (8th

6

Cir.1985) (quoting 11 U.S.C. § 1129(a)(11)); *see In re Danny Thomas Prop. II Ltd. P'ship*, 241 F.3d 959, 962 (8th Cir. 2001).

31. "One of the requirements for confirmation is that the debtor be able to make all payments under the plan and comply with the plan." *In re Richards*, No. 03–02487, 2004 WL 764526, *2 (Bankr.N.D.Iowa Apr.2, 2004) (quotation omitted). The Eight Circuit has held that "[i]n determining whether [a plan] is feasible, the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable." *In re Monnier Bros*., 755 F.2d at 1341 (quoting *United Prop., Inc. v. Emporium Dep't Stores, Inc.,* 379 F.2d 55, 64 (8th Cir. 1967)).

32. Feasibility of a plan examines the plan proponent's ability to successfully consummate the provisions of the proposed plan. *See In re Lakeside Global II, Ltd*., 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989). When determining whether a plan is feasible, a bankruptcy court must carefully scrutinize the plan to determine whether it "offers a reasonable prospect of success and is workable." *In re Riverbend Leasing LLC,* 458 B.R. 520, 531 (Bankr. S.D. Iowa 2011). The Debtor must "sustain its burden to somehow prove that it will be able to perform all obligations it is assuming under the plan." *In re Trevarrow Lanes, Inc.*, 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995).

33. Again, the Plan does not show that the reorganization and Plan payments are feasible. The Plan is also vague regarding how the Debtor intends to implement the Plan to make Plan payments.

34. As the UST noted in its Motion to Dismiss, the Debtor appeared and testified at the 341 Meeting and testified to having an ownership interest in multiple businesses active at the time of filing or within the immediate years prior to filing. He testified that through the various

7

businesses he oversaw, he caused the significant co-mingling of business and personal funds. Each business did not have separate bank accounts. As of the bankruptcy filing and throughout this case Debtor has continued to comingle his personal and business funds. Debtor detailed the struggle to keep his prior accountant engaged after the bankruptcy filing and noted continued issues maintaining his books and records, which have been described by the Debtor as "horrific."

35. As the UST also noted in its Motion to Dismiss, the monthly reports appear to show that the Debtor has been co-mingling business and personal funds. The co-mingling of funds makes any feasibility determination of the Plan impossible.

36. The Debtor has just recently caught up on filing his monthly operating reports.

37. The Plan also does not provide adequate means of implementation as required under section 1123(a)(5) of the Bankruptcy Code. 11 U.S.C. § 1123(a)(5). Again, the Plan contemplates monthly payments to creditors of approximately $8,740.80 in addition to approximate quarterly payments to creditors of $549.12.

38. Section IV of the Plan entitled "MEANS OF IMPLEMENTING THE PLAN" lists the Debtor's intentions and source of payments for the Plan payments. According to the Plan, payments and distributions under the Plan will be funded by the Debtor's personal and business income. Plan Section IV.

39. For personal income, the Plan states the Debtor will use personal income from the following: regular W-2 income as an employee of his businesses; monthly income from social security benefits; his tax-exempt housing allowance income from the Church where he is Presiding Bishop, and supplemental Form 1099 income from the Church. The Plan further states he may also receive additional income from his share of the judgment he was awarded from litigation, depending on the success of collection efforts from that judgment. This personal income is

speculative and is not a steady stream of income reliable to make $9,000 monthly Plan payments.

40. For business income the Debtor relies on the following: revenue from AON Studios, LLC and AON Meetings, LLC and loan payments from J.W. Reed Academy, all of which are non-debtors that have not filed bankruptcy.

41. Federal Rule of Bankruptcy Procedure 2015.3 requires a debtor to file 2015.3 reports which state the value, operations, and profitability of each entity in which the estate holds a substantial or controlling interest. Fed. R. Bankr. P. 2015(3). The Debtor has failed to file any 2015.3 reports. The information contained in the 2015.3 reports would assist creditors in determining the feasibility of the Debtor's Plan.

42. The Debtor also states that he may sell or refinance personal assets or his business assets to enable him to make Plan payments or obtain capital to operate his business. Again, this provision is vague, speculative, and does not state what assets the Debtor will refinance or sell nor does the Plan describe what that process would entail. The Debtor does not state whether he would be filing a motion under section 363 of the Bankruptcy Code.

43. Without these critical facts, the Plan cannot be said to provide adequate information, nor can creditors determine whether the Plan is feasible.

44. Further, as stated above, the Debtor has made some payments to U.S. Bank on both the U.S. Bank Home Loan Claim and the U.S. Bank Commercial Loan Claim; however, the payments have not been consistent, have been sporadic and have significantly varied in the amount paid. A copy of the post-petition payment history is attached hereto as **Exhibit "A"** and is incorporated herein by this reference.

45. Based on the history of post-petition payments made throughout the case, U.S. Bank has doubts that the Debtor can consistently make his payments under the Plan. This is further

evidence to support that the Plan is not feasible.

46. U.S. Bank also objects to the default and cure periods listed in the Plan. Pursuant to Section IV(H)(1)(a) of the Plan:

> After the Confirmation Date, the failure of the Debtor to make any payment required under the Plan when due; provided, however, that, except as otherwise provided in this Plan, no default shall be deemed to have occurred if such missed payment is made **within thirty (30) days of its due date**.

Section IV(H)(1)(a) (emphasis added). Section IV(H)(3) further states:

> Except as otherwise provided by this Plan or by an order of the Bankruptcy Court issued upon application by a party in interest, if an event of default under this Plan occurs and **is not cured within fifteen (15) days** after service of written notice of default on the Debtor and on counsel for the Debtor, any holder of an Allowed Claim, subject to the provisions of this Plan, may immediately pursue their rights and remedies under applicable non-bankruptcy law against the Debtor, including, but not limited to, instituting levy or foreclosure proceedings, judicial or non-judicial.

Section IV(H)(3) (emphasis added). Under these default provisions, the Debtor has at least 45 days to make missed payments under the Plan. Based on the Debtor's past history of payments and the uncertainty of Plan payments, these provisions are not fair and equitable to creditors nor are they feasible. If the Debtor believes he will need 45 days to cure missed Plan payments, it appears there is some doubt that the Debtor believes he will actually be able to timely make the Plan payments which again goes to the feasibility of the Plan.

47. Based on the foregoing, the Plan is not feasible and must not be confirmed.

**C.   The Plan Violates the Anti-Modification Provisions of Section 1123(b)(5) of the Bankruptcy Code.**

48. The treatment of U.S. Bank's Class 2 Claim violates the anti-modification provision of section 1123(b)(5) of the Bankruptcy Code and the exception under 1190(3) does not apply.

10

49. The Class 2 Claim is secured by a security interest in real property that is the Debtor's principal residence.

50. Under the anti-modification provision, a chapter 11 reorganization plan may not "modify rights of holders of . . . a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5). In a major change from non-subchapter V Chapter 11 cases, section 1190(3) of the Bankruptcy Code eliminates the anti-modification provision of Code section 1123(b)(5) for the rights of a claim secured only by a security interest in real property that is the debtor's principal residence if the new value received in connection with the granting of the security interest **was not used primarily to acquire the real property and was used primarily in connection with the small business of the debtor.** 11 U.S.C. § 1190(3) (emphasis added).

51. The inclusion of the word "primarily" allows courts to consider whether the debtor purchased the residential property with the intent to use it for a business purpose. *See In re Ventura*, 615 B.R. 1, 25 (Bankr. E.D.N.Y. 2020), order reversed on other grounds, appeal dismissed sub nom. *Gregory Funding v. Ventura*, 638 B.R. 499 (E.D.N.Y. 2022). Under such a review, courts consider several factors to determine whether the mortgage in question is subject to modification under this section:

(1) Were the mortgage proceeds used primarily to further the debtor's business interests;

(2) Is the property an integral part of the debtor's business;

(3) The degree to which the specific property is necessary to run the business;

(4) Do customers need to enter the property to utilize the business; and

(5) Does the business utilize employees and other businesses in the area to run its operations.

*Id.*

52.     Here, the Debtor did not purchase the residence for a business purpose nor does the Debtor use the residence for a business purpose. The residence has nothing to do with the business and is the personal residence of the Debtor. 11 U.S.C. § 1123(a)(5). The property is also not necessary for the debtor to run his business, customers do not visit the business, and employees do not use the residence to run operations.

53.     When a debtor incurs mortgage debt for the purpose of residing in the property, that is for a personal—not business—purpose. *See In re Blue*, 630 B.R. 179, 194 (Bankr. M.D.N.C. 2021) ("Debtor testified, and the Court so finds, that she incurred the original mortgage debt on the real property for the purpose of residing in the property, and that it is a personal, non-business debt.").

54.     Therefore, the factors weigh in favor against modification of the mortgage. As such, section 1190(3) should not apply, and the Plan is in violation of the anti-modification provision of section 1123(b)(5).

   **D.     The Plan Violates Section 1129(b)(2)(A) of the Bankruptcy Code and is Not Fair and Equitable**

55.     Pursuant to Bankruptcy Code section 1129(b), the Court may "cram down" a plan over rejection by impaired classes of claims or equity interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes. S*ee, e.g., In re Am. Trailer & Storage, Inc.*, 419 B.R. 412, 433 (Bankr. W.D. Mo. 2009).

56.     Subchapter V does not change the applicable Chapter 11 standard for determining if the cramdown treatment of a secured claim is fair and equitable. *See* 11 U.S.C. § 1191(c)(1); *see In re Pearl Res*. LLC, 622 B.R. 236, 265 (Bankr. S.D. Tex. 2020).

57. Rather than leaving the concept of "fair and equitable" open to interpretation, subchapter V defines it as the debtor committing all of its "projected disposable income" or property of equivalent value to make the payments under the plan for a minimum of three, and a maximum of five, years. 11 U.S.C. § 1191(c)(2)(A). A subchapter V debtor must also show a "reasonable likelihood" that it will be able to make all payments due under the plan. 11 U.S.C. § 1191(c)(3)(A)(ii).

58. A plan is fair and equitable to a class of impaired, non-consenting secured creditors if each secured creditor (1) retains the lien securing its claim and receives deferred cash payments totaling at least the allowed amount of its secured claim; (2) receives the "indubitable equivalent" of the value of its claim; or (3) receives a lien on the proceeds of a sale of its collateral (free and clear of its lien) subject to its right to purchase the property by credit bidding its secured claim against the purchase price under section 363(k) of the Bankruptcy Code. 11 U.S.C. § 1129(b)(2)(A)(i-iii).

59. Pursuant to the Plan, U.S. Bank's Class 2 and Class 5 claims are retaining the liens securing both claims and are receiving cash payments. The cash payments are required to be at minimum the allowed amount of the Class 2 and Class 5 Claims.

60. Bankruptcy Code section 506(b) allows oversecured creditors to recover interest on their claims as well as reasonable attorney fees, costs, charges, and default interest, as provided under the agreement or state law. 11 U.S.C. § 506(b). Pursuant to the Plan, the U.S. Bank Class 2 Claim and Class 5 Claim are both oversecured. As such, under section 506(b), the Class 2 and Class 5 Claims are entitled to post-petition interest, including default interest, reasonable attorney fees, and costs as long as it's provided for in contract and allowed under state law. *See also In re Family Pharmacy, Inc.,* 614 B.R. 58 (2020) (Court held that an oversecured creditor has an

13

unqualified right to postpetition interest at the contract rate, including the default rate, provided that the rate is allowed under state law and there are no compelling equitable reasons to deny it)).

61. Pursuant to the U.S. Bank Home Promissory Note, U.S. Bank is entitled to default interest at a rate of 5.00% plus the rate provided in the Note (11.5%) on its Class 2 Claim, plus reasonable attorney fees and costs.

62. Pursuant to the U.S. Bank Commercial Promissory Note, U.S. Bank is entitled to default interest at a rate of 4.00% plus the rate provided in Note (12.49%) on its Class 5 Claim, plus reasonable attorney fees and costs.

63. U.S. Bank should be receiving principal, plus accrued and unpaid interest, default interest, fees, and expenses at the contract rate through the Effective Date of the Plan on both its Class 2 and Class 5 Claims and the monthly payments in the Plan must be amended accordingly. The Debtor should also address the impact of such changes when analyzing feasibility of the Plan.

64. As such, the Class 2 and Class 5 Claim treatments are not fair and equitable, and the Plan violates section 1129(b)(2)(A)(i) of the Bankruptcy Code. 11 U.S.C. § 1129(b)(2)(A)(i).

65. The Plan also states that the Class 2 Claim will receive a balloon payment of the outstanding balance or a refinance of the Class 2 Claim on or before the anniversary of the maturity date of 2030. The Debtor does not state how he intends to make this balloon payment. The Debtor needs to be specific in the amount of such balloon payment and the source of funds to make the payment. Further if the Debtor does intend to refinance, the Debtor should clarify the prospects for refinancing. The alleged balloon payment and refinance also weigh against the feasibility of the Plan.

66. There are further deficiencies with the treatment of the Class 5 Claim. The Class 5 Claim does not have a set maturity date, nor does it state whether there will be a balloon payment,

refinance, or some other treatment. The U.S. Bank Commercial Promissory Note matured prior to the Debtor filing for bankruptcy. The Class 5 Claim should include language regarding new loan documentation. The Debtor should reaffirm his obligations under the loan documents and U.S. Bank's security interests in the collateral and execute all documentation required by U.S. Bank to substantiate and memorialize the final terms of treatment and repayment of the U.S. Bank Claims including, but not limited to, an omnibus amendment to the existing loan documents subject to the approval of U.S. Bank in its sole discretion. As such, the treatment of Class 2 and Class 5 is not fair and equitable.

67. Based on all the foregoing, the Plan is not feasible, is not fair and equitable, and does not comply with the Bankruptcy Code. As such, the Plan is not confirmable.

**WHEREFORE**, U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-2 respectfully requests the Court enter an order denying confirmation of the Debtor's Chapter 11 Plan of Reorganization, and for any other and further relief just and equitable under the circumstances.

Respectfully submitted,

*/s/ Tirzah R. Roussell*
Krystal R. Mikkilineni, AT0011814
Tirzah R. Roussell, AT0014113
Dentons Davis Brown, P.C.
215 10th Street, Suite 1300
Des Moines, IA 50309
Telephone: (515) 288-2500
Facsimile: (515) 243-0654
Email: krystal.mikkilineni@dentons.com
Email: tirzah.roussell@dentons.com

Counsel for the U.S. Bank Trust Company, National Association, as Trustee for Velocity Commercial Capital Loan Trust 2023-2

## CERTIFICATE OF SERVICE

I certify that on March 6, 2025, the above and foregoing document was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

X    upon filing, the Court's electronic noticing system sent notice to all parties participating in the CM/ECF system in this matter.

/s/ *Tirzah Roussell*
Tirzah Roussell